**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JOHN STAPAS, | : | No. 44 WAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered December 23, 2016 at |
| | : | No. 1287 WDA 2015, vacating the |
| v. | : | Judgment of the Court of Common |
| | : | Pleas of Allegheny County entered |
| | : | July 24, 2015 at No. GD09-012965 |
| GIANT EAGLE, INC., A PENNSYLVANIA | : | and remanding. |
| ENTITY; GIANT EAGLE, INC., T/D/B/A | : | |
| GETGO FROM GIANT EAGLE, A | : | ARGUED: April 10, 2018 |
| PENNSYLVANIA ENTITY; GIANT EAGLE | : | |
| INC., T/D/B/A SOUTHSIDE GETGO, A | : | |
| PENNSYLVANIA ENTITY; NADEEN | : | |
| MCSHANE, AN INDIVIDUAL; GETGO | : | |
| PARTNERS SOUTH, A PENNSYLVANIA | : | |
| ENTITY; GETGO PARTNERS SOUTH- | : | |
| MARYLAND, LLC, A PENNSYLVANIA | : | |
| ENTITY; AND GETGO HOLDINGS, LLP, | : | |
| A PENNSYLVANIA ENTITY, | : | |
| | : | |
| Appellees | : | |

## OPINION

**JUSTICE MUNDY**                               **DECIDED: NOVEMBER 21, 2018**

In this appeal by allowance, we consider whether Giant Eagle was required to object to the jury's verdict awarding future lost wages to preserve its challenge to the verdict, which Giant Eagle labeled as a weight of the evidence challenge in its post-trial motion. We conclude that an objection to a jury's verdict that is premised on trial errors, correctable before the jury is discharged, must be raised before the jury is discharged.

Accordingly, we reverse the Superior Court's order awarding Giant Eagle a new trial on damages.

In this premises liability case, John Stapas sued Giant Eagle and related entities (collectively Giant Eagle) for injuries he sustained at a GetGo convenience store. At the time of the incident, Stapas was 17 years old and worked full-time as a busboy and dishwasher at a restaurant, earning $8.25 per hour plus $14.00-$20.00 per shift in tips. On July 18, 2007, Stapas went to GetGo after his restaurant shift. At GetGo, he was talking to his friend, Crystal Stogden, who worked the night shift there. Minutes after Stapas arrived, a customer exiting the store held the door open for Brandon McCallister to enter. McCallister had been banned from patronizing that GetGo location.

McCallister, who appeared intoxicated, started arguing with Stogden about his ban. Stapas was not initially involved in the argument. After about one minute, Stapas intervened to attempt to diffuse the argument and protect Stogden and another female employee, LaToya Stevens.

Eventually, Stapas, McCallister, Stogden, and Stevens exited the store into the parking lot area. Outside the store, McCallister's friend was waiting for him. Stapas told Stogden to get back inside the store, and Stevens remained outside. McCallister continued screaming at the employees as Stapas followed him to his vehicle, insisting that he leave. As they approached McCallister's car, McCallister initiated a physical fight with Stapas. During the fight, McCallister pulled out a gun, which he had concealed on his person, and shot Stapas four times. Stapas missed six weeks of work while recovering from the injuries, and he continues to have daily stomach pain from the shooting.

On July 16, 2009, Stapas filed a writ of summons, and on November 10, 2009, Stapas filed a complaint asserting negligence claims against Giant Eagle. This case

proceeded to a five-day jury trial, from November 10 to November 17, 2014. Pertinent to this appeal, Stapas did not present evidence on, or make any claim for, future wage loss.

In his closing argument, Stapas's counsel mentioned Stapas's potential future lost wages if he could not continue to work with his injuries, but stated that Stapas was "not sitting here asking you for, you know [$]6-700,000 in wages for the rest of his life, because he's going to fight through this. . . . [T]hat's a decision we made. And the Judge will give you the numbers of past and present wage loss. It's small. It's six weeks of eight or nine dollars an hour, and it's not much." N.T., 11/17/14, at 836. Similarly, Giant Eagle's counsel estimated Stapas's wage loss at $2,000 to $3,000. *Id.* at 804.

Following the parties' closing arguments, the trial court charged the jury that if it found Giant Eagle liable, its damages award should "fairly and adequately compensate [Stapas] for all the physical and financial injuries he has sustained as a result of the incident. The amount . . . must compensate [Stapas] completely for damages sustained in the past, as well as damage [Stapas] will sustain in the future." *Id.* at 848. The trial court did not specifically instruct the jury on past and future wage loss. *Id.* at 848-50. Additionally, the trial court instructed the jury to return its verdict in "a single lump sum." *Id.* Giant Eagle did not object to the trial court's instructions on damages or request an instruction on past or future wage loss.

The trial court gave the jury a verdict slip with six interrogatories. The first five interrogatories related to the various elements of negligence. The sixth interrogatory, related to damages, called for the jury to:

> State the amount of damages, if any, sustained by the Plaintiff as a result of the accident (occurrence), without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the Plaintiff, including the items listed below. In the event that you find in favor of Plaintiff, you will add the sums of damage together and return your verdict in a single, lump sum.

Verdict Slip, 11/17/14, Question 6 (R. 1063a).

Below the sixth interrogatory, there was a list of five categories of damages, followed by a line beginning with "total." Giant Eagle did not object to the verdict form. The jury found Giant Eagle liable and filled out the damages interrogatory by handwriting an amount next to each category (indicated below with bold and underlining), even though they were not specifically directed to, and then writing the sum on the "total" line, as follows:

    a. Scarring **liposuction $3000**

    b. Wage loss **past $3000, future $1,300,000**

    c. Past and future medical expenses **past $30,000 future 0**

    d. Past, present and future pain and suffering **$500,000**

    e. Loss of life's pleasures **$250,000**

    Total: **$2,086,000**

*Id.* (R. 1064a).

When the jury returned the verdict slip, the trial court's tipstaff read the itemized damages, including the amount for wage loss, and the total amount. Giant Eagle did not object. Immediately after the verdict, the trial court polled the jury, confirmed that counsel had no further questions or objections, and dismissed the jury. The trial court entered a molded verdict in favor of Stapas and against Giant Eagle for $1,552,780.00, which reflected the jury's finding that Giant Eagle was 73% negligent and Stapas was 27% negligent. Additionally, on February 25, 2015, the trial court added delay damages of $279,795.17, for a total award of $1,802,575.17.

On November 26, 2014, Giant Eagle filed a motion for post-trial relief, requesting a new trial, JNOV, or remittitur.[1] The trial court continued oral argument on the motion pending the preparation of the complete trial transcript. The transcript was not filed until July 20, 2015, which was approximately eight months after Giant Eagle filed its motion. On July 24, 2015, Stapas filed a praecipe to enter judgment because more than 120 days had passed since Giant Eagle filed its post-trial motion, which rendered the post-trial motion denied by operation of law. *See* Pa.R.C.P. 227.4(1)(b). On August 21, 2015, Giant Eagle filed a notice of appeal in the Superior Court.

Although the trial court did not have an opportunity to rule on Giant Eagle's post-trial motions, it filed an opinion expressing its view that Giant Eagle had waived its objections to the jury's calculation of the $2,086,00.00 general verdict. Trial Ct. Op. at 5 (citing *Picca v. Kriner*, 645 A.2d 868, 871 (Pa. Super. 1994) (holding the request for a new trial is waived if objections to a jury's inconsistent verdict are not raised before the jury is dismissed)). The trial court explained that the parties jointly drafted and agreed to the jury verdict slip containing the six interrogatories, the trial court gave the verdict form to the jury without objection, and Giant Eagle did not object to the jury's verdict before the trial court dismissed the jury. The trial court noted if Giant Eagle had objected before the jury was dismissed, the trial court could have required the jury to clarify its verdict. Accordingly, the trial court concluded Giant Eagle had waived its right to a new trial by failing to object to the jury's damages award before the trial court dismissed the jury.

---

[1] While the post-trial motion set forth a claim for remittitur, Giant Eagle did not pursue this claim either in the Superior Court or in this appeal. In particular, Giant Eagle has not sought a reduction of the lump sum award of damages ($2,086,000) on the grounds that it was excessive and not supported by the evidence of record. Instead, Giant Eagle has focused its efforts exclusively on attempts to obtain a new trial based upon the weight of the evidence for the award for future lost wages noted on the verdict slip.

On appeal, a unanimous panel of the Superior Court vacated the judgment and remanded for a new trial on damages. The Superior Court explained it reviews the denial of a motion for a new trial for an abuse of discretion or error of law. *Stapas v. Giant Eagle, Inc.*, 153 A.3d 353, 359 (Pa. Super. 2016). Further, the court noted a claim that the verdict was against the weight of the evidence warrants a new trial only "where the verdict is so contrary to the evidence it shocks one's sense of justice." *Id.* (quoting *Cangemi ex rel. Estate of Cangemi v. Cone*, 774 A.2d 1262, 1265 (Pa. Super. 2001)).

The Superior Court first classified the verdict as a "general verdict with special findings." *Id.* at 363. The court reasoned that while the trial court instructed the jury to return a general verdict, the jury actually returned a general verdict with special findings by assigning an amount of damages to each category listed in the damages interrogatory on the verdict slip. *Id.*

Next, the Superior Court disagreed with the trial court that Giant Eagle had waived its argument for failing to object before the jury was dismissed. *Id.* at 364. The court stated that a party "who fails to object to an ambiguous or flawed jury verdict before the jury is dismissed waives the right to challenge the verdict in post-trial motions." *Id.* (citing *Criswell v. King*, 834 A.2d 505, 508 (Pa. 2003)). The Superior Court noted the trial court, citing *Picca*, relied on this rule to conclude Giant Eagle's issue was waived. *Id.* at 363. However, the court noted an exception to this rule is that a party does not have to raise a challenge to the weight of the evidence before the jury is discharged; instead, it may be raised for the first time in post-trial motions. *Id.* at 364 (citing *Criswell*, 834 A.2d at 512). Because Giant Eagle's post-trial claim was framed as a challenge to the sufficiency and weight of the evidence, the Superior Court concluded "Giant Eagle properly preserved its right to seek a new trial by filing a timely post-trial motion contending the verdict was against the weight of the evidence and shocked one's sense of justice." *Id.* at 364.

Analyzing Giant Eagle's weight of the evidence challenge, the Superior Court concluded the record did not support the verdict for future lost wages because Stapas did not seek and did not prove that category of damages. *Id.* at 365. The court acknowledged that if the jury had followed the trial court's instructions to return a lump sum verdict, the court would not be able to discern the jury's error in awarding future lost wages. *Id.* However, the jury's special findings reflected the award of $1,300,000.00 for future lost wages, which the court concluded was "inconsistent with the general verdict." *Id.* (relying on *Fritz v. Wright*, 907 A.2d 1083, 1092 (Pa. 2006) (stating "in the usual case where special findings are consistent with the general verdict, the special findings are considered merely advisory")). According to the court, "[u]nder these circumstances, the special findings compel us to conclude that the verdict was against the weight of the evidence and that the trial court abused its discretion by not granting Giant Eagle a new trial." *Id.* Therefore, the Superior Court vacated the judgment and remanded for a new trial limited to damages. *Id.* at 372.

We granted allocatur to consider whether Giant Eagle waived its challenge to the damages award by not objecting before the jury was discharged but instead raising the issue for the first time in its post-trial motions. We also granted allocatur to consider whether the Superior Court's decision conflicted with this Court's decisions in *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974), and *Straub v. Cherne Industries*, 880 A.2d 561 (Pa. 2005). *Stapas v. Giant Eagle, Inc.*, 171 A.3d 1283 (Pa. 2017). The applicability of waiver principles presents a question of law, over which our standard of review is de novo and our scope of review is plenary. *Straub*, 880 A.2d at 566 n.7.

As the parties' arguments involve a discussion of *Dilliplaine*, *Criswell*, and *Straub*, we will first discuss those cases to provide the legal background surrounding the issue. In *Dilliplaine*, this Court held that a "timely specific objection" must be raised to preserve

allegations of trial error. *Dilliplaine*, 322 A.2d at 117. In so doing, this Court abolished the "fundamental error" doctrine, which had allowed an appellate court to consider fundamental errors for the first time on appeal. *Id.* at 116-17. The *Dilliplaine* Court explained that requiring a timely, specific objection at trial promoted judicial efficiency by giving the trial court the opportunity to correct trial errors, reducing appellate review of those issues, and avoiding the delay to litigants inherent in appellate review. *Id.* at 117. Accordingly, the *Dilliplaine* Court held that the appellant waived his objection to a jury instruction because he did not offer a point for charge or object to the trial court's jury instruction. *Id.*

The *Dilliplaine* rule has come to be known as the "contemporaneous objection" rule. It is now codified in Pennsylvania Rule of Civil Procedure 227.1(b), which provides:

> (b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,
>
> > (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and
> >
> > (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(b)(1)-(2). Further, the note to Rule 227.1 explains "[i]f no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief." Pa.R.C.P. 227.1, Note.

In *Criswell*, this Court held that a weight of the evidence challenge does not have to be raised before the jury is discharged to preserve it, and a weight claim can be raised for the first time in post-trial motions. *Criswell*, 834 A.2d at 506. *Criswell* involved a

negligence claim arising out of an automobile accident in which the parties presented competing evidence to the jury, mainly on damages. *Id.* at 507. The jury in *Criswell* found the appellee's negligence did not cause the appellant's injuries in response to a causation interrogatory. *Id.* at 507. The appellant did not object before the jury was discharged and later filed a post-trial motion for a new trial, arguing the verdict was against the weight of the evidence. *Id.* The trial court found the jury's verdict on causation was against the weight of the evidence and granted a new trial. *Id.*

However, the Superior Court reversed, concluding the appellant waived the weight challenge by failing to object before the jury was discharged. *Id.* at 508. To reach its conclusion, the Superior Court applied its decision in *Picca*, which held a party's failure to object to the jury's ambiguous response to special interrogatories before the jury was dismissed waives the ability to challenge the verdict in post-trial motions. *Id.* (citing *Picca*, 645 A.2d at 868). The Superior Court reasoned that if the appellant had objected to the verdict, the trial court could have instructed the jury to clarify its ambiguous verdict. *Id.*

This Court reversed the Superior Court and concluded that a weight of the evidence claim ripens after the jury's verdict, reasoning:

> A weight challenge is *sui generis*. Such a claim is not premised upon trial court error or some discrete and correctable event at trial, but instead ripens only after, and because of, the jury's ultimate verdict in the case. The challenge does not dispute the power of the jury to render the verdict it rendered, nor does it even allege any facial error in the verdict of the jury (be it, in the eyes of the challenger, a flaw, an inconsistency or a total injustice). Assuming that the case properly was ripe for jury consideration--*i.e.*, neither of the parties was entitled to a directed verdict because a properly joined issue of material fact remained for resolution--the jury is fully empowered to rule in favor of either or any party. The basis for a weight claim derives from the fact that the trial court, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses; the hope and expectation animating a weight challenge is that the

trial court will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice as to trigger the courts time-honored and inherent power to take corrective action.

*Id.* at 512. Because a weight challenge is addressed to the trial court's discretion, only the trial judge can resolve it; the trial court cannot instruct the jury to weigh the evidence differently. *Id.* at 513. Accordingly, a party seeking to raise a weight challenge is not required to object before the jury is discharged to preserve the claim, because the jury cannot resolve the claim. *Id.* Based on this analysis, this Court concluded the appellant presented a weight claim that ripened only after the verdict, and he did not have to object to the verdict before the trial court dismissed the jury. *Id.*

In *Straub*, this Court held the defendant waived its argument, advanced for the first time in its post-trial motion, that the evidence was insufficient to support the jury's verdict. *Straub*, 880 A.2d at 567. The jury in *Straub* found, in response to special interrogatories, that the defendant's product was not defective but that the defendant was negligent. *Id.* at 565. The defendant did not object to the interrogatories, the trial court's jury instructions, or the verdict. *Id.* at 567. Instead, the defendant filed a post-trial motion, which asserted the jury's finding that the defendant was negligent could not stand because the jury found the product was not defective and the plaintiff did not produce any independent evidence of negligence unrelated to the condition of the product. *Id.* at 565. Applying Rule 227.1, the *Straub* Court held that the defendant waived this argument. *Id.* at 567. This Court reasoned that the defendant's argument was that the jury could not find the defendant negligent as a matter of law, not that the jury erred in weighing the evidence. *Id.* (explaining "[the defendant] is not arguing that the verdict cannot stand because a reasonable jury could not have found [the defendant] negligent based on the evidence that [the plaintiffs] introduced at trial"). Therefore, this Court concluded the

defendant's objections were waived because the verdict sheet and the jury instructions did not accurately state the law, and the defendant did not object to them. *Id.*

We now turn to the parties' arguments in this case. Stapas argues that Giant Eagle waived its challenge to the flawed jury verdict by failing to object at trial. Stapas asserts that *Dilliplaine* requires a contemporaneous objection to problematic verdicts and trial errors. Stapas contends that despite *Dilliplaine*'s contemporaneous objection requirement, Giant Eagle failed to object to the verdict or the trial court errors preceding the verdict. First, Stapas notes that the jury's verdict did not conform to the trial court's instructions because the jury did not return a single, lump sum of damages; instead, the jury created its own special findings. However, Giant Eagle did not object. Second, Giant Eagle did not request a point for charge on wage loss. Third, Giant Eagle did not object to the trial court's instructions explaining wage loss. Fourth, Giant Eagle did not object to the verdict slip that listed "wage loss," but did not differentiate between past wage loss and future wage loss. Therefore, according to Stapas, Giant Eagle waived its right to a new trial on damages based on the jury's flawed verdict.

Additionally, Stapas contends this Court has established a bright-line rule for when an objection to a verdict must be raised to preserve an issue for appeal in *Straub* and *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 46 (Pa. 2011) (holding the failure to object to a molded verdict waived the issue on appeal). If the verdict is the product of trial error, or involves a discrete, correctable event at trial, or involves the capacity of the jury to return the verdict at all, the objection must be lodged before the jury is discharged. On the other hand, under *Criswell*, a weight of the evidence challenge may be raised for the first time in post-trial motions. In this case, Stapas contends *Straub* is controlling because Giant Eagle disputed the right of the jury to make its findings as a matter of law.

Further, Stapas argues the Superior Court erred in not considering *Straub* in its decision. Thus, Stapas maintains that Giant Eagle's failure to object waived the issue.

Further, Stapas argues that Giant Eagle's attempt to label its challenge to the jury's verdict as a weight of the evidence issue fails. Stapas asserts that Giant Eagle argued the jury's apparent award of future wage loss was unsupported by any evidence; Giant Eagle did not argue that the jury improperly weighed competing evidence on future wage loss. Because the jury in this case did not resolve a factual dispute over future wage loss, Stapas argues this case is distinguishable from *Criswell*. Instead, Stapas views *Straub* as controlling because the jury verdict arose from errors in the jury instructions and the verdict sheet, to which Giant Eagle did not object. According to Stapas, this is not a weight of the evidence issue, it is an assertion that the jury could not award future wage loss as a matter of law. As such, Stapas concludes Giant Eagle waived it by failing to object before the jury was discharged.

Lastly, Stapas contends that if Giant Eagle had objected to the jury verdict, the trial court could have recharged the jury by defining wage loss. Stapas points out the trial court opined it could have corrected the errors before it discharged the jury. If the jury then returned the same amount, it would have represented the jury's clarification that it mischaracterized the damages as "future wage loss." Stapas posits that the jury might have intended to compensate Stapas for working the rest of his life in pain or for the mental stress of worrying about being unemployable because of his injuries. On the other hand, if the jury returned a lesser amount after being recharged, it would have clarified that it was confused by the "wage loss" category without further instructions. Thus, the error was correctable at trial, and Giant Eagle had to raise an objection at trial to preserve the issue.

Stapas contends that if we do not enforce the contemporaneous objection rule, we would be giving a windfall to Giant Eagle. Specifically, the jury awarded over $750,000.00 in noneconomic damages. By not raising the issue until the post-trial stage, Giant Eagle obtained a new trial on damages with a new jury free to award a different amount of noneconomic damages. Stapas argues this creates a disincentive to objecting at trial and giving the trial court the opportunity to correct trial errors to arrive at a more unobjectionable verdict.

In response, Giant Eagle maintains that its challenge to the jury's verdict was not waived because it is a true weight of the evidence claim. Giant Eagle stresses that its post-trial motions argued the jury's award of $1.3 million for future wage loss shocked the judicial conscience. Giant Eagle submits that the jury's verdict was not facially inconsistent; instead, the jury's damages award was excessive in light of the evidence. Accordingly, Giant Eagle asserts it was not necessary to object to give the jury an opportunity to correct its findings.

Giant Eagle relies on *Criswell*'s reasoning that a challenge to the weight of the evidence ripens after the verdict, and the trial court cannot issue a corrective instruction requiring the jury to reweigh the evidence because it would essentially be directing a verdict. Giant Eagle argues that the jury's verdict in this case was legally and logically consistent, but still not supported by the evidence. The consistency of this verdict distinguishes it from *Straub*, where the verdict was inherently inconsistent. Giant Eagle's challenge to the verdict is not based on a claim of inconsistency, but is based on the verdict shocking the conscience. Because of this, Giant Eagle argues that the trial court could not have corrected the jury's award of damages for future wage loss with additional instructions and the jury redeliberating.

Giant Eagle also contends the trial court did not issue erroneous jury instructions. It points out that Stapas endorsed the trial court's instructions and verdict slip. Giant Eagle posits that under Stapas's theory, Giant Eagle should have requested an instruction that punitive damages were not available as they were not requested or proven. According to Giant Eagle, it did not challenge the jury instructions or inconsistency of the verdict, but its lack of evidentiary support.

Giant Eagle concludes by noting that the Superior Court properly awarded a new trial on damages because even Stapas admits the evidence did not support the verdict awarding damages for future wage loss. Further, Stapas does not advocate a worthy cause or seek to vindicate any rights. Instead, Stapas concedes he has no right to the award for future wage loss but relies on a waiver rule to keep the verdict.

After careful review, we conclude Giant Eagle waived its challenge to the jury's verdict by failing to object to the verdict before the trial court dismissed the jury. Under *Dilliplaine* and Rule 227.1(b), post-trial relief cannot be granted if the basis for the post-trial motion related to a verdict arose during the trial proceedings and the party seeking relief did not raise a contemporaneous objection. *See Dilliplaine*, 322 A.2d at 117; Pa.R.C.P. 227.1(b)(1).

Here, Giant Eagle is challenging the jury's ability to award damages for future lost wages even though Stapas did not introduce any evidence of future wage loss and the trial court did not instruct the jury on the definition of "wage loss." Giant Eagle had multiple opportunities to preserve this ground for post-trial relief during the trial court proceedings but failed to do so. Specifically, Giant Eagle did not request a point for charge limiting wage loss to only past wage loss, did not object to the jury interrogatory listing "wage loss" as a category of damages, and did not object to the trial court's damages instructions. Additionally, Giant Eagle did not object to the jury's verdict in which the jury

specified that it awarded Stapas $1,300,000.00 for future wage loss. When the trial court's tipstaff read the jury's itemized verdict, Giant Eagle had a basis to object because the verdict did not conform to the trial court's instruction to return a single, lump-sum verdict and because the jury awarded damages for future lost wages, a category of damages that Stapas was not entitled to as a matter of law. By failing to raise an objection at any point during the trial before the jury was discharged, Giant Eagle waived its challenge to the jury's verdict.

*Dilliplaine*'s judicial efficiency rationale for the contemporaneous objection requirement supports this conclusion. In this case, the trial court did not instruct the jury on the difference between past wage loss and future wage loss, and the verdict slip did not qualify the category of "wage loss" damages. In fact, the trial court instructed the jury to "compensate [Stapas] completely for damages sustained in the past, as well as damage [Stapas] will sustain in the future." N.T., 11/17/14, at 848. As the trial court explained, if Giant Eagle had objected before it dismissed the jury, it could have required the jury to clarify the verdict. Alternatively, it could have provided the jury with an instruction on past wage loss. *Compare* Pa. Suggested Standard Civil Jury Instructions § 7.110 (providing jury instruction for past lost earnings) *with id.* § 7.40 (supplying jury instruction for future loss of earnings and lost earnings capacity). Because the trial court did not instruct the jury at all on the definition of "wage loss" as used in the interrogatories, such an instruction could have clarified the issue for the jury.[2] Further, such an instruction would not be directing the jury to reweigh the evidence, but it would provide direction on which type of wage loss was recoverable as a matter of law. By not objecting to the

---

[2] The dissent maintains, "the jury acted unpredictably and against the direction of the trial court and all counsel." Dissenting Op. at 1. However, the jury was not instructed that it could not award damages for future wage loss or that it could award damages only for past lost earnings. Instead, it was presented with a verdict slip that listed "wage loss" as a category of damages.

verdict, Giant Eagle deprived the trial court of the opportunity to efficiently correct a trial error. Raising the issue for the first time in a post-trial motion is an inefficient use of judicial resources, which *Dilliplaine* sought to eliminate through the contemporaneous objection requirement. *See Dilliplaine*, 322 A.2d at 117.

Giant Eagle's characterization of its challenge to the verdict as a weight of the evidence challenge does not avoid waiver. Giant Eagle's challenge was not grounded in the weight of the evidence. As the *Criswell* Court explained, a weight of the evidence claim ripens after the verdict because it does not challenge the jury's ability to render a verdict; instead, it contends the jury's resolution of competing evidence was "a miscarriage of justice." *Criswell*, 834 A.2d at 512. Further, if either party was entitled to a directed verdict on the issue because there were no material facts for the jury to resolve, the issue is not properly before the jury and cannot form the basis of a weight of the evidence claim. *Id.* In this case, Stapas did not present any evidence of future lost wages and further acknowledged in his closing argument that he was not seeking damages for future lost wages. There was no competing evidence on future lost wages for the jury to weigh, and that issue was not ripe for the jury's consideration. *See id.* Instead, Giant Eagle's position is that the jury could not award damages for future lost wages as a matter of law. Therefore, we conclude Giant Eagle's challenge to the verdict is not a challenge to the weight of the evidence and thus its failure to object to the jury instructions, damages interrogatory, and jury verdict waived the grounds raised in its post-trial motion. *See Straub*, 880 A.2d at 567 (reasoning that defendant's sufficiency challenge was waived because it was not based on the evidence but on the jury's ability to render a verdict as a matter of law).[3]

---

[3] The dissent agrees, "there simply was no evidence of future wage loss." Dissenting Op. at 4.

For these reasons, we conclude Giant Eagle did not preserve the grounds upon which it claimed post-trial relief. Accordingly, we reverse the order of the Superior Court granting Giant Eagle a new trial on damages and reinstate the jury's verdict.

Jurisdiction relinquished.

Justices Baer, Todd, Donohue and Wecht join the opinion.

Justice Dougherty files a dissenting opinion in which Chief Justice Saylor joins.