J-E02002-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TINA SUE MCKAHAN | : | No. 10 WDA 2019 |

Appeal from the Suppression Order Entered November 28, 2018,
in the Court of Common Pleas of Greene County,
Criminal Division at No(s):  CP-30-CR-0000096-2018.

BEFORE:  BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY KUNSELMAN, J.:               FILED JANUARY 12, 2021

This is an interlocutory appeal[1] by the Commonwealth from an order suppressing the blood-alcohol-content ("BAC") report of Defendant, Tina Sue McKahan, in a driving-under-the-influence case.  Ms. McKahan allegedly drove drunk and crashed her jeep in Greene County, Pennsylvania.[2]  Authorities transported the unresponsive Ms. McKahan across state lines for medical care. At the request of a police officer from Pennsylvania, the West Virginia State Police obtained and executed a search warrant for all of Ms. McKahan's medical records, instead of only the BAC report.

_____

[1] The interlocutory appeal is properly before us.  See Pa.R.A.P. 311(d).

[2] The Commonwealth charged Ms. McKahan with having violated 75 Pa.C.S.A. § 3802(c) (driving under the influence, high rate of alcohol), 75 Pa.C.S.A. § 3802(a)(1) (general impairment), and three summary offenses.

The Pennsylvania trial court deemed West Virginia's search warrant to be overly broad in violation of the Constitution of the United States. The court therefore suppressed the evidence it produced. A divided panel of this Court reversed, and we granted Ms. McKahan's application for en banc review to resolve the constitutional issues. However, the Commonwealth's failure to preserve those issues prevents us from doing so.

According to the Commonwealth, around midnight on January 30, 2018, Ms. McKahan drove her vehicle in Waynesburg, Pennsylvania while under the influence of alcohol.[3] The vehicle left the roadway, flipped over, and seriously injured her. Paramedics took Ms. McKahan to the West Virginia University's Ruby Memorial Hospital, located in nearby Morgantown. During treatment, the hospital staff drew and analyzed Ms. McKahan's blood.

Meanwhile, Waynesburg police contacted West Virginia law enforcement for assistance with investigating Ms. McKahan. West Virginia State Police provided a West Virginia magistrate with an affidavit and Waynesburg Officer Margaret Vorum's written narrative of the incident. The magistrate issued a warrant authorizing police to search the hospital for, "All the medical records of every nature in any way to any medical treatment rendered on behalf of Tina Sue McKahan (1/4/81) since 01/29/2018 . . . ." Id. at 4. The search warrant then provided an exemplary list "including, but not limited to, copies of the following: (1) All clinical reports; (2) Results of all laboratory tests;

_____

[3] Ms. McKahan has little to no recollection of the event aside from waking up in the hospital and not signing consent forms. See N.T., 8/30/18, at 37-39.

- 2 -

(3) All notes, correspondences, or records of any nature made by any physicians, nurses, or any other persons concerning Tina Sue McKahan's condition or [her] treatment." Id.

The hospital gave 158 pages of Ms. McKahan's medical records, including the BAC report, to the West Virginia state trooper. The trooper forwarded all of the records to Officer Vorum. She leafed through them, found the BAC report, and charged Ms. McKahan with various offenses, including DUI.

Ms. McKahan moved to suppress her medical records under the Fourth Amendment and Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania. She argued, among other things, that the search warrant was unconstitutionally broad, because it authorized police to search the hospital for and to seize all her medical records, rather than just the BAC report.

In response, the Commonwealth argued the warrant was not overly broad but, if so, suppressing the BAC report was inappropriate. To support its argument, the Commonwealth offered a theory rooted in the federal good-faith exception to the warrant requirement. The District Attorney of Greene County argued before the suppression court that, "the exclusionary rule is [n]ever meant to be a punishment; it's meant to keep out irrelevant evidence." N.T., 8/30/18, at 43. The Commonwealth did not raise the issue of inevitable discovery at the suppression hearing or in its memorandum of law.

After reviewing the search warrant, its accompanying documents, and the parties' post-hearing memoranda of law, the suppression court ruled that the search warrant was overly broad and unparticularized in its list of items to be seized. Thus, it granted Ms. McKahan's motion to suppress. Because the Commonwealth did not assert that the inevitable-discovery exception applied, the suppression did not address that issue in its orders or opinions. This timely appeal followed.

The Commonwealth raises one issue: "Did the [suppression] court err in determining the [BAC] results should be included in its suppression order . . . ?" Commonwealth's Brief at 4.

On appeal, the Commonwealth makes no challenge to the suppression court's determination that the search warrant was unconstitutionally broad. Moreover, in the argument potion of its brief, the Commonwealth relies solely upon the doctrine of inevitable discovery to redeem the otherwise unconstitutional search and seizure. See id. at 16-17. Thus, the Commonwealth abandons its suppression-hearing theory that the purpose of the exclusionary rule is not to punish police misconduct. See N.T., 8/30/18 at 43. Instead, it shifts its rationale for excusing the unconstitutional search warrant from the good-faith exception to a claim of inevitable discovery.

Before reaching the merits of the Commonwealth's argument, we must decide whether it properly preserved that issue for our appellate review. "The applicability of waiver principles presents a question of law, over which our

standard of review is de novo and our scope of review is plenary." Stapas v. Giant Eagle, Inc., 198 A.3d 1033, 1037 (Pa. 2018).

Preserving an issue "is foundational to proper appellate review." Trigg v. Children's Hosp. of Pittsburgh of UPMC, 229 A.3d 260, 269 (Pa. 2020). "Requiring issues to be properly raised first in the trial court ensures that trial judges have the opportunity to consider a potential appellate issue and correct any error at the first available opportunity." Id. This Court "exceed[s its] scope of appellate review by considering an issue that was not preserved" below. Id. at 275 (Wecht, J. concurring).

We first observe how the federal good-faith exception to the suppression remedy differs from the admissibility of evidence under doctrine of inevitable discovery.

A classic example of the good-faith exception is found in United States v. Franz, 772 F.3d 134 (3d Cir. 2014). There, the United States Court of Appeals for the Third Circuit considered a search warrant with the same constitutional defect as the one at bar. As in the instant case, investigators in Franz secured a search warrant based on probable cause to believe that inculpating evidence was inside the building to be search. Also like this case, the warrant did not comply with the constitution's demand that search warrant "particularly describ[e] the . . . things to be seized." U.S. Const. amnd. IV. Hence, investigators "violated Franz's Fourth Amendment rights, because, [the warrant] did not contain a particularized list of items to be seized." Franz at 144. The court said the question before it was "not whether there was a

constitutional violation; there was. The question [was] whether that violation necessitates the suppression of the evidence obtained pursuant to the" invalid search warrant.[4] Id.

Franz argued the Fourth Amendment analysis should cease once the court determined the search warrant failed to list the items to be seized. In his view, the technical violation required suppression. The court disagreed. Instead, it performed the good-faith-exception analysis of United States v. Leon, 468 U.S. 897 (1984).

Under Leon, "we consider not only any defects in the warrant but also the officer's conduct in obtaining and executing the warrant and what the officer knew or should have known." Franz at 147. Because the investigating officer made an honest mistake by not particularly listing the items to be seized on the search warrant and did not intend to violate the defendant's rights, the corrective purpose of suppression would not be served by invoking that remedy. There was no point in punishing the investigators for negligently drafting the warrant. Affirming the denial of suppression, the court explained that "application of the exclusionary rule would provide little deterrent effect and would not justify the costs of suppression" in light the investigator's honest drafting error. Id. at 149.

_____

[4] See also Bartholomew v. Pennsylvania, 221 F.3d 425, 429 (3d Cir. 2000) (making clear, in a civil-rights suit, to police officers that not listing particular items to be seized on a search warrant violates the Fourth Amendment and, henceforth, such a constitutional violation is actionable for damages).

In the instant case, by arguing to the suppression court that suppression would unfairly punish the Pennsylvania police for a minor, clerical error by the West Virginia State Police, the Commonwealth essentially contended that the purpose for the federal exclusionary rule would not be well served by enforcing it here. In other words, the Commonwealth claimed that the police acted in good faith and did not deserve to be punished for an unintentional violation of Ms. McKahan's Fourth Amendment rights.

On appeal, by contrast, the Commonwealth does not argue either the good-faith exception to the Fourth Amendment, or that we should refrain from punishing the Waynesburg police for the West Virginia state trooper's poorly drafted search warrant. Thus, the Commonwealth has waived any federal argument that the Waynesburg police acted in good faith. See Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.")

Instead, the Commonwealth contends we should apply the doctrine of inevitable discovery to reverse the trial court and allow the BAC report to be admitted into evidence. To prove inevitable discovery, the Commonwealth must show that "the evidence in question would inevitably have been discovered without reference to the police error or misconduct." Commonwealth v. Fulton, 179 A.3d 475, 489–90 (2018). In short, the police would have eventually uncovered the evidence from a constitutional source. The Commonwealth has the burdens of production and persuasion in this regard. See id.

As we explained however, at the suppression court, the Commonwealth did not raise or argue how it would have inevitably discovered Ms. McKahan's BAC report. See N.T., 8/30/18; see Commonwealth's Memorandum to Suppression Court. It afforded the suppression court no opportunity to rule on whether police would have inevitably discovered this evidence if they had not first obtained it under the overly broad warrant. The Commonwealth therefore failed to apprise the suppression court of this alternative, constitutional claim.

The Commonwealth may not raise the claim that the officer's discovery of the BAC report was inevitable for the first time on appeal. We have long held that "issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." Commonwealth v. Pi Delta Psi, Inc., 211 A.3d 875, 884 (Pa. Super. 2019), appeal denied, 221 A.3d 644 (Pa. 2019). We are compelled to dismiss the Commonwealth's sole appellate issue as waived.

Order of suppression affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Emeritus Bender and Judges Lazarus, Dubow and McCaffery join this memorandum.

Judge Bowes files a concurring memorandum in which Judges Shogan and Olson join.

Judge Olson concurs in the result.

Judge Murray files a dissenting memorandum in which Judge Bowes, Shogan and Olson join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2021