J-A16008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BILAL S. JUSTICE | : | |
| | : | |
| Appellant | : | No. 1305 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 26, 2020,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0001651-2019.

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BILAL S. JUSTICE | : | |
| | : | |
| Appellant | : | No. 1306 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 26, 2020,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0004942-2019.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED: AUGUST 31, 2021**

Bilal Justice appeals from judgments of sentence imposing an aggregate of 21 to 42 years' incarceration. In consolidated cases, a jury convicted him of trafficking heroin/fentanyl and related offenses, including conspiracy to deliver the drugs that killed Carmen Vega.[1] The trial court denied Justice's

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2506(a), 3925(a), 903(a)(1) and 35 P.S. § 78-113(a)(30).

motion to suppress (filed at Trial Court Docket No. 4942-2019) based upon a misapplication of the coordinate-jurisdiction rule, but we still affirm under the right-for-any-reason doctrine. We conclude that, even if the trial court would have held a suppression hearing in case 4942-2019, the Commonwealth would have prevailed at suppression based upon the inevitable-discovery rule.

The trial court related the facts of this case as follows:

> On December 27, 2018, Detective Gartrell of the Northern York County Regional Police Department received information from a confidential informant that "very strong" heroin stamped as "Harlem Nights" was being distributed in York County. On December 29, 2018, officers responded to a report of an unattended death at a Super 8 Motel in Manchester Township, York, Pennsylvania. Officers found the victim, Carmen Vega, lying face down, along with three blue bags stamped "Harlem Nights." The victim was pronounced dead at the scene.

> Later testing of the powdered substance contained in one of the bags revealed the presence of tramadol and fentanyl. The victim's cause of death was later determined to be mixed-substance toxicity, with fentanyl as a very substantial contributor. Police officers, now in search of the individual responsible for distributing the "Harlem Nights," received information from an informant that the source of the drugs was a person known as "L."

> On January 3 and 7, 2019, a drug buy, between the informant and "L," later determined to be Bilal Justice . . . was setup and observed by police officers.

> *       *       *       *       *

> On January 3, 2019, . . . the informant was told to meet "L" at the rear of 820 West King Street in York, Pennsylvania. Police officers observed "L" arrive in a gold Chevy Impala, enter and exit the apartment at 820 West King using a key, and then enter the informant's vehicle. The vehicle then circled the block, observed by police, and

the informant returned to Detective Gartrell with the purchased bundles of heroin or fentanyl, stamped with "Harlem Nights." On January 7, 2019, a similar buy was setup with "L" by the same informant. Officers again observed "L" exit the residence and get into the informant's car, which circled the block. The informant returned to Detective Gartrell with heroin he purchased from "L." Photographs of "L" were taken by police officers at each of the transactions.

Detective Monte of the York City Police Department ran the registration of the vehicle driven by "L," which came back as registered to a Brandy Deas, with the database also listing the name of Brandon Deas. As the informant only knew the individual who sold him drugs as "L," police determined "Brandon Deas" was the name of the individual observed entering and exiting 820 West King and circling the block with the informant for the purpose of conducting a drug transaction. Based on the observations of officers on January 3rd and 7th, a search warrant was obtained for the apartment at 820 West King Street, with "L" named as "Brandon Deas."

On January 10, 2019, another buy was setup between the informant and "L." The informant was told to meet a silver Cadillac at a specific CVS parking lot, and officers again went to the location to observe. A silver Cadillac pulled in directly next to the informant, and the informant approached the passenger window, at which point police cars pulled behind the Cadillac and officers ordered the driver to exit the vehicle. After refusing to comply, the driver eventually exited the vehicle. As the individual was yelling and running over officers, he was immediately placed into custody and transported to booking, where his identification was obtained, revealing his name to be Bilal Justice . . . The individual was the same person known by the informant as "L" and observed by police meeting with the informant for drug transactions on January 3rd and 7th. Accordingly . . . Justice was the individual known as "L," but police officers mistakenly believed his name to be "Brandon Deas" based on the registration of the vehicle driven by "L" on January 3rd.

A search of the residence pursuant to the warrant was also executed, prior to determining "L's" real name, and

- 3 -

revealed a large sum of heroin, the majority of which was stamped with "Harlem Nights" and packaged the same as the heroin purchased by the informant from "L." Documents indicating an individual by the name of Bilal Justice lived at the residence were also found during the search.

Trial Court Opinion, 12/14/20, at 1-2, 6-8 (citations to transcripts omitted).

The Commonwealth charged Justice at separate docket numbers below, and different defense attorneys represented him in each case.[2] The attorneys filed separate motions to suppress the Commonwealth's evidence.

In June of 2019, Defense Attorney Ashley D. Martin, Esq. filed the first motion to suppress, at docket number 1651-2019 (hereafter "First Motion"). There, Justice contended the police unconstitutionally arrested him without a warrant or probable cause, in violation of the Fourth Amendment to the Constitution of the United States. Justice attached the search warrant for his residence to his First Motion, and he relied upon the search warrant to assert the police inadequately identified him at the time of arrest. However, Justice did not challenge the constitutionality of the search warrant in the First Motion.

On August 21, 2019, the suppression court considered and denied that motion. According to the suppression court, police officers had probable cause to arrest Justice on January 10, 2019, because their personal observations of Justice conducting drug deals on January 3rd and 7th with their confidential informant warranted them in the belief that he was had trafficked drugs and intended to do so again on January 10th. Critically, the suppression did not

_____

[2] A third attorney now represents Justice on appeal.

- 4 -

consider or address the validity of the search warrant for Justice's residence, because, as mentioned, Justice neither raised nor argued the validity of the search warrant in the First Motion.[3]

Four months later, on December 9, 2019, Attorney Richard Robinson, Esq. filed a second motion to suppression for Justice, at docket number 4942-2019, (hereafter "the Second Motion"). Although pages one and two of the Motions share identical language, the rest of the Second Motion differed from the First. Rather than focusing solely on Justice's arrest, the Second Motion alleged, "The four corners of the search warrant were deficient . . . in that the subject identified was Brandon Deas and not Bilal Justice." Second Motion at 3. Because Justice's name never appeared within the search warrant or supporting affidavit, he claimed that executing was a constitutional violation and all evidence seized during the search should be suppressed.

Eventually, the trial court consolidated the two cases, but the Second Motion remained pending by the time of jury selection. *See* N.T., 3/3/20, at 7-8. With a new judge presiding, the two defense attorneys and prosecutors met with the trial court in chambers. They had an off-the-record discussion, while the venirepersons awaited *voir dire*.

The trial court returned to the courtroom and announced that Justice's Second Motion needed resolved before the trial could proceed. The court held

---

[3] Justice sought to amend his First Motion to expand it to the search of his residence, but the suppression court dismissed that request as untimely. *See* N.T., 1/29/20, at 18.

that the First Motion and the Second Motion "are substantially similar." ***Id.*** at 8. In the trial court's opinion, they both challenged "the legality of the underlying search warrant in the property on West King Street, 820, that was the subject of the warrant. And that was addressed specifically by [the suppression court] . . . So, despite the fact there was no specific ruling on [the Second] Motion, I'm denying [it]. I believe that [the Second Motion] is subsumed in the opinion of [the suppression court,] and the rule of the case controls." ***Id.*** at 8-9.

The case then proceeded to a jury trial. The jury convicted Justice, and the court sentenced him as described above. He timely appealed.

Justice raises five claims of error. We reorder them below, because this Court decides sufficiency-of-the-evidence issues first in criminal matters.[4] Justice's appellate issues are:

1. In . . . CR-4942-2019, was the evidence insufficient to convict [him] of Conspiracy – Drug Delivery Resulting in Death, when the testimony and evidence submitted at trial showed that [Ms. Vega] died of multiple-drug toxicity, and not from an overdose of the drug allegedly provided by [Justice]?

2. In . . . CR-1651-2019, did the trial court err when it denied [the First] Motion [because] the officer's investigation and the testimony of the confidential

---

[4] ***See Commonwealth v. Toritto***, 67 A.3d 29, 33 (Pa. Super. 2013) (*en banc*) (citing *dicta* from ***Commonwealth v. Stokes***, 38 A.3d 846 (Pa. Super. 2011) and elevating it into a "best practice" by stating, "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first.").

informant indicated that another individual [supplied] the confidential informant with controlled substances?

3. In . . . CR-1651-2019, in so much as the suppression court erred when it failed to suppress the evidence against [Justice] under [the First Motion], did [it also] err when it failed to suppress the evidence under the same grounds in the case docketed on Docket Number CR-1651-2019?

4. In . . . 4942-2019, did the trial court err when it denied [the Second] Motion to Suppress the evidence obtained in the search warrant . . . as, contrary to the court's ruling, the motion to suppress dealt with a different issue than [the First Motion], as [the Second Motion] dealt with the insufficiency of the warrant within the four corners of the affidavit, instead of insufficient probable cause for a warrantless arrest, as stated in [the First Motion]?

5. In . . . CR-4942-2019, [if] the suppression court erred when it failed to suppress the evidence against [Justice] under the [Second] Motion filed in the case docketed at CR-4942-2019,[5] did the trial court err when it failed to suppress the evidence under the same grounds in the case docketed on the above captioned docket number (CR-1651-2019)?

Justice's Brief at 5-6. We address issue one, then issues two and three together, and finally issues three and four separately.

*1. Sufficient Evidence of Conspiracy – Drug Delivery Resulting in Death*

---

[5] We note that, in his statement of questions raised on appeal, Justice wrote, "under the **first** Omnibus Pre-Trial Motion filed in the case docketed at CR-4942-2019 . . . ." Justice's Brief at 6 (emphasis added). However, as explained above, his first motion to suppress was that of Attorney Martin in CR-1651-2019. Thus, we consider the identification to CR-4942-2019 to be intended and the world "first" to be a typographical error. Justice meant to write "second Omnibus Pre-Trial Motion." Otherwise, his statement of this issue would be nonsensical.

Justice contends that the Commonwealth failed to introduce sufficient evidence at the jury trial to prove that the drugs he conspired to deliver killed Ms. Vega.

He argues that, because Ms. Vega "died from mixed-substance toxicity, and it was never proven that, without the fentanyl in her system [Ms. Vega] would have died, [Justice] cannot be held responsible for her death." *Id.* at 37. In his view, the Commonwealth was required to prove that his drugs (by comparison to other drugs that Ms. Vega consumed on the day she died) were the but-for cause of her death. *See id.* at 40.

Regarding a sufficiency-of-the-evidence claim, "our standard of review is *de novo*; however, our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420–21 (Pa. 2014).

To convict Justice of conspiracy to deliver drugs resulting in death, the Commonwealth needed to prove beyond a reasonable doubt that, among other things, "another person die[d] as a result of using the substance" he conspired to deliver. 18 Pa.C.S.A. § 2506(a). The Commonwealth did so. Its forensic pathologist, whom the trial court accepted as an expert, found "the level of fentanyl [in Ms. Vega's blood] to be the substantial cause of her death." N.T., 3/3/20, at 168. This was the same fentanyl Justice conspired to deliver.

The expert's conclusion on the cause of Ms. Vega's death was proof beyond a reasonable doubt that the drugs Justice labeled "Harlem Nights" killed her. The jury was free to take the testimony of the forensic pathologist at face value. Accordingly, sufficient evidence existed from which the jury could find that Justice conspired to deliver the drugs that killed Ms. Vega.

*2.     Probable Cause to Arrest in Appeal 1305 MDA 2020*

Next, we address Justice's second and third issues together, as he argues them simultaneously in his brief. **See** Justice's Brief at 19-29. These issues center upon the denial of the First Motion to suppress the evidence, because Justice expressly limited them to case CR-1651-2019. As mentioned, the suppression court denied his motion, because it found that probable cause existed to arrest Justice on January 10, 2019. Justice challenges that ruling on two grounds.

First, he contends the search warrant for his residence was invalid under Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania. **See** **id.** at 19-23. Justice claims that, because police misidentified the occupant of as Brandon Deas, they were attempting to arrest him using a search warrant with material misstatements of fact in violation of the state constitution.[6]

Before reaching the merits of Justice's argument under Article I, § 8, we must decide whether he preserved his constitutional theory for appellate review. "The applicability of waiver principles presents a question of law, over

---

[6] We note a conceptional difficulty with this argument. The police did not use the **search** warrant to arrest Justice.

which our standard of review is *de novo*, and our scope of review is plenary."

***Stapas v. Giant Eagle, Inc.***, 198 A.3d 1033, 1037 (Pa. 2018).

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. "We have said issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." ***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 884 (Pa. Super. 2019), *appeal denied*, 221 A.3d 644 (Pa. 2019).

Justice's argument based on the Constitution of the Commonwealth of Pennsylvania is waived, because he did not raise – or even mention – Article I, § 8 in the First Motion or at the suppression hearing. Both Motions assert, "Defendant was unlawfully arrested and seized in violation of the Fourth Amendment to both the Pennsylvania and United States Constitutions." First Motion at 2, ¶ 16; Second Motion at 2, ¶(6)(b). There is no Fourth Amendment to the Constitution of the Commonwealth of Pennsylvania, and Justice's First Motion never mentioned Article I, § 8 of the state constitution.

In fact, regarding the First Motion to suppress and whether she raised a four-corner challenge under Article I, § 8, Justice's attorney told the trial court, "I don't believe I preserved that issue properly for Mr. Justice on appeal." N.T., 3/3/20, at 14-15. We agree with Justice's attorney; she failed to preserve this issue for appeal in docket number 1651-2019.

As such, we dismiss Justice's state constitutional theory as waived.  Our review is confined to the Fourth Amendment to the Constitution of the United States.[7]

Second, Justice contends the police lacked probable cause to arrest him without a warrant on January 10, 2019.  In his view, because he met the confidential informant at the CVS Pharmacy in a silver Cadillac, rather than the gold Chevrolet Impala that police observed him driving or parked near the prior drug deals, the arresting officers lacked probable cause.  **See** Justice's Brief at 27-28.  However, Justice overlooks many other facts the suppression court found which strongly contributed to its conclusion that probable cause existed at the time of his arrest.

Under the Fourth Amendment, when reviewing a denial of suppression, our standard of review varies depending upon whether police obtained a warrant.  **Compare Illinois v. Gates**, 462 U.S. 213 (1983), **with Ornelas v. United States**, 517 U.S. 690 (1996).  Where, as here, police did not obtain an arrest warrant, our standard of review for whether probable cause existed is *de novo*.  **See Ornelas**, 517 U.S. at 691.  However, we review a suppression

_____

[7] The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

court's findings of fact deferentially. The "reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 699.

In explaining the denial of suppression, the trial court opined:

> A warrantless arrest in a public place is reasonable where the officer has probable cause to believe 1) that a felony was committed and 2) the person to be arrested is the felon. *Commonwealth v. Travaglia*, 467 A.2d 288, 292 (Pa. 1983). Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Commonwealth v. Clark*, 735 A.2d 1248, 1252 (Pa. 1999).
>
> Here, Detective Gartrell had probable cause to believe a felony was committed by [Justice] on two occasions prior to the warrantless arrest. The individual observed by police on January 3rd and January 7th engaging in a drug transaction with the informant was the same individual – "L," later revealed to be named Bilal Justice. The individual who arrived on January 10th to meet [at CVS] with the informant to again conduct a drug transaction was the same individual – "L," or Bilal Justice. The officers' mistaken belief as to "L's" true name does not change the fact that they observed the same person each time, and that person was Bilal Justice. Accordingly, the suppression court properly found officers had probable cause to arrest [Justice].

Trial Court Opinion, 12/14/20, at 10-11 (case citations incorporated into the body from footnotes).

In other words, the mere fact that Justice arrived on the 10th of January in a silver Cadillac did not negate the many other facts that the suppression court found. First, the police recognized Justice from the prior two drug deals.

- 12 -

Second, he matched the pictures of the suspect police had taken at the prior two transactions. Third, "L" told the informant that he would arrive at the CVS in the silver Cadillac to do another drug deal. And fourth, "L" drove the silver Cadillac into the parking spot adjacent to the confidential informant's vehicle, and "L" spoke with the informant before police surrounded the Cadillac. The police and suppression court could reasonably infer from these facts that "L" had come to CVS and spoke with the informant to sell illicit drugs.

Based upon all the foregoing, there was a sufficient basis to warrant a person of reasonable caution to believe that "L" was the driver of silver Cadillac and he was about to sell illicit drugs to the informant. **See Clark**, **supra**. In short, crimes of drug-trafficking were clearly afoot, and the investigating officers had the probable cause to arrest the driver of the silver Cadillac within the confines of the Fourth Amendment.

Hence, Justice's issues contesting the decision of the August 21, 2019 suppression court are waived or meritless, respectively.

3. *Coordinate-Jurisdiction Rule in Appeal 1306 MDA 2020*

Next, Justice contends that the trial court should not have applied the coordinate-jurisdiction rule to his Second Motion. The trial judge believed the suppression court's decision of August 21, 2019 was the binding law of the case under the coordinate-jurisdiction rule. **See** N.T., 3/3/20, at 8-9. The trial court explained, "If one judge said [the Commonwealth's evidence is] admissible, it's binding on me." **Id.** at 14.

- 13 -

Counsel for Justice's First Motion replied, "Just so it's clear, my motion [to suppress] was on a separate issue." ***Id.***

The trial court said, "Well, it's clear you say that it was a separate issue. It's not a separate issue. Four-corners wasn't an issue." ***Id.*** Thus, the court concluded the First and Second Motions raised identical, legal issues, and the coordinate-jurisdiction rule applied.

Justice argues this was an error, as a matter of law. He indicates the Second Motion "dealt not with the arrest or search of [his] vehicle, but with the search of the residence at 820 West King Street." Justice's Brief at 29.

In response, the Commonwealth is silent. It ignores Justice's argument that the trial court misapplied the coordinate-jurisdiction rule to deny him a suppression hearing in case 4942-2019. The phrase "coordinate-jurisdiction rule" does not even appear in the Commonwealth's Brief.

Application of the coordinate-jurisdiction rule raises "a question of law. Thus, our standard of review is *de novo*." ***Zane v. Friends Hosp.***, 836 A.2d 25, 30 n.8 (Pa. 2003).

The coordinate-jurisdiction rule, a part of the doctrine of the law of the case, "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." ***Commonwealth v. King***, 999 A.2d 598, 600 (Pa Super. 2010) (quoting ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995)). Among those related, but distinct rules, making up the doctrine is

- 14 -

the rule that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question **previously decided** by the transferor trial court." **Id.** (emphasis added).

Simply stated, "once a matter has been decided by a [common pleas court] judge, the decision should remain undisturbed, unless the order is appealable, and an appeal therefrom is successfully prosecuted." **Starr**, 664 A.2d at 1331 (citing **Golden v. Dion & Rosenau**, 600 A.2d 568, 570 (Pa. Super. 1991)).

Here, the main issue in the Second Motion – whether the search warrant was sufficient within its four corners or invalid due to the misidentification of the resident of 820 West King Street – was not "previously decided." **King**, **supra**. Indeed, because that issue was not raised in the First Motion, Justice waived that legal issue in case 1651-2019. **See** Section 2, **supra**. Therefore, the suppression judge had not "previously decided" the four-corner challenge to the search warrant.

Therefore, we agree with Justice. The trial judge's mistakenly relied upon the coordinate-jurisdiction rule to deny his Second Motion. However, our appellate review does not end there, because "an appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record." **Commonwealth v. Hamlett**, 234 A.3d 486, 488 (Pa. 2020).

Notwithstanding the trial court's legal error, it properly admitted the Commonwealth's evidence at the jury trial under the inevitable-discovery rule.

Adopted in ***Nix v. Williams***, 467 U.S. 431 (1984), the inevitable-discovery rule is an exception to the exclusionary rule. ***See, e.g., Wong Sun v. United States***, 371 U.S. 471 (1963). Under ***Nix***, even if the search warrant for Justice's residence was technically deficient as he claims, the inevitable-discovery rule saves the evidence discovered therein from suppression.

"Under the inevitable discovery doctrine, if the prosecution can establish by a preponderance of the evidence that illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible." ***Commonwealth v. Davis***, 241 A.3d 1160, 1172 (Pa. Super. 2020), *appeal denied*, ____ A.3d ____, 2021 WL 1744997 (Pa. 2021). Further, "in cases where evidence is gathered through 'a substantially unwitting violation of the warrant requirement, devoid of any cognizable misconduct,' the inevitable discovery doctrine in Pennsylvania is coterminous with its application under the Fourth Amendment." ***Id.*** (quoting ***Commonwealth v. Berkheimer***, 27 A.3d 171 (Pa. Super. 2012) (*en banc*)).

Here, Justice does not claim or demonstrate any deliberate misconduct by the police when they misnamed him in the search warrant. The officers made an honest mistake of draftsmanship that in no way lessen the probable cause within the affidavit to the search warrant. Indeed, Justice does not contend that probable cause to search his residence was lacking.

As explained above, law enforcement constitutionally arrested Justice on January 10, 2019. ***See*** Section 2, ***supra***. Afterwards, police took him to their booking center, where they learned his true name. Meanwhile, other

officers executed the search warrant for Justice's residence that accidentally misidentified him as Brandon Deas.

Based on facts that the suppression court found credible, we conclude law enforcement possessed information to rectify any technical errors of misidentification in their original search warrant by requesting a supplemental warrant. That supplemental search warrant would have correctly identified Bilal Justice as the occupant of 820 West King Street. Thus, if police had not executed the search warrant bearing Brandon Deas's name, they would have inevitably discovered the evidence in Justice's residence via a supplement warrant, correctly naming Justice as the occupant.

Applying the right-for-any-reason doctrine and the inevitable-discovery rule, we affirm the trial court's denial of the Second Motion.

### 4.    *No Appellate Relief*

As his final issue, Justice argues, if the evidence from case 1651-2019 should have been suppressed, then it should also have been suppressed in case 4942-2019. **See** Justice's Brief at 34. He contends the same is true regarding the evidence not suppressed in case 4942-2019 relative to case 1651-2019. **See id.** Justice believes appellate success on either suppression issue results in suppression for both cases, because the jury's deliberations would have been tainted by unconstitutionally seized evidence from the other case.

- 17 -

Because we have affirmed both orders denying suppression, Justice's claim that those denials improperly impacted his jury trial is meritless. No appellate relief is due.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2021